# United States Court of Appeals
## for the First Circuit

No. 11-1407

SCOTT BERGEMANN ET AL.,

Plaintiffs, Appellants,

v.

RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
AND GINA M. RAIMONDO, IN HER CAPACITY AS
TREASURER OF THE STATE OF RHODE ISLAND,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lipez, Selya and Howard,
Circuit Judges.

Jeffrey D. Sowa, with whom Marshall M. Raucci and LaPlante
Sowa Goldman were on brief, for appellants.
Thomas A. Palombo, Assistant Attorney General, for appellees.

December 20, 2011

**SELYA**, **Circuit Judge**.  This appeal poses a question that has divided the circuits.  The question, which is a matter of first impression for this court, is whether a state waives its sovereign immunity to a pleaded claim by removing that claim to the federal court.  We conclude that a waiver occurs only if the removal confers an unfair advantage on the removing state.  Because the district court reached this same conclusion and because its other rulings are unimpugnable, we affirm the judgment below.

## I.  BACKGROUND

This case is the latest in a series of courtroom assaults launched by a cadre of Rhode Island environmental police officers (EPOs) against their employer, the Rhode Island Department of Environmental Management (DEM), a department of state government.  The EPOs receive collectively bargained wages and benefits.  They have long been dissatisfied with the DEM's handling of certain wage and benefit matters.

The claims asserted in this case grow directly out of the EPOs' unorthodox work schedules.  To ensure that an adequate number of officers are on duty every day of the year, the DEM requires EPOs to work staggered four-day-on, two-day-off schedules.  Under this paradigm, an EPO must work any holiday that coincides with a scheduled work day.  In such an instance, the collective bargaining agreement (CBA) between the state and the EPOs' union provides that the affected EPO will receive compensation over and above his usual

salary. The EPOs' complaint about this arrangement is that the extra holiday pay is not being factored into the calculation of their retirement benefits.

To understand this claim, it is important to note that the EPOs participate in a state employee retirement plan, which entitles them to employer-paid pension contributions that are based on their total "compensation." See R.I. Gen. Laws § 36-10-2. The EPOs also contribute to their own pensions a percentage of their "compensation." See id. § 36-10-1. The EPOs complain that the state does not treat their extra holiday pay as "compensation" within the definition prescribed by the relevant statute, see id. § 36-8-1(8), and therefore their pensions are being underfunded.

The EPOs' next claim stems from another unique aspect of their work schedules: the requirement that they remain on call during their lunch breaks. The EPOs contend that this arrangement entitles them to compensation for the time spent having lunch. Counting these intervals, the EPOs estimate that they work on average 37.5 hours per week[1] yet are paid a weekly wage based on only 35 hours. Accordingly, they claim an entitlement to back pay for the allegedly unpaid two-and-one-half hours per week.

The state opposes both the holiday pay and lunch break claims. It relies on the statutory definition of "compensation"

---

[1] The actual number of hours that an EPO will work in a given week varies due to how that week intersects the four-day-on, two-day-off work schedule.

-3-

and the language and history of the CBA to argue that it is in compliance with its retirement-plan obligations. Further, the state points out that the EPOs are not hourly workers but, rather, receive annual salaries that compensate them for both their hours actually worked and their lunch periods.

With these grievances in the forefront, the EPOs sued the DEM and Rhode Island's General Treasurer (collectively, the state) in a Rhode Island state court. Their complaint asserted that the state's failure to compensate them for their lunch periods transgressed the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and breached the terms of the CBA; that the state's refusal to include the extra holiday pay in the calculation of pension contributions violated the relevant provisions of state law; and that the state's noncompliance with its statutory and collectively bargained obligations had resulted in its unjust enrichment. Seizing on the FLSA claim, the state removed the action to the federal district court. See 28 U.S.C. §§ 1331, 1441(a). The state then sought dismissal of the FLSA claim on immunity grounds.

The district court determined that the state was immune from suit on the FLSA claim. See Bergemann v. Rhode Island (Bergemann I), 676 F. Supp. 2d 1, 5-9 (D.R.I. 2009). Accordingly, the court dismissed that claim. See id. at 9. The court retained supplemental jurisdiction over the remaining claims, see 28 U.S.C. § 1367, and allowed them to go forward.

-4-

Following the close of discovery, the parties cross-moved for summary judgment. The district court concluded that the EPOs had received the full measure of benefits to which they were entitled under the CBA and state law. See Bergemann v. Rhode Island (Bergemann II), C.A. No. 09-150, 2011 WL 1042748, at *7-10 (D.R.I. Mar. 18, 2011). Consequently, it granted the state's motion and denied the EPOs' cross-motion. Id. at *12.

This timely appeal ensued. In it, the EPOs challenge both the dismissal of their FLSA claim and the entry of summary judgment on their other claims.

## II. THE FLSA CLAIM

We review the district court's dismissal of the FLSA claim de novo. See McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006). In performing that task, we take as true all well-pleaded factual allegations contained in the complaint and cede all reasonable inferences therefrom to the plaintiffs. Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 16 (1st Cir. 2006).

In the main, states are immune from claims brought by private persons in federal courts. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); see U.S. Const. amend. XI. Yet, this immunity is not absolute. A state may waive immunity from suit. Sossamon v. Texas, 131 S. Ct. 1651, 1658 (2011). Alternatively, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers. See Alden v. Maine, 527 U.S. 706,

756 (1999). "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1638 (2011).

Congress has not abrogated Rhode Island's immunity from FLSA claims. See Mills v. Maine, 118 F.3d 37, 48 (1st Cir. 1997). The relevant question, then, is whether Rhode Island has waived its immunity.

Leaving to one side waivers that occur by reason of a state's participation in federal programs that require a surrender of sovereign immunity, see, e.g., Petty v. Tenn.-Mo. Bridge Comm'n, 359 U.S. 275, 280-82 (1959), a state may waive immunity in one of two ways. First, a state may waive its immunity expressly; that is, by unequivocally expressing its consent to suit. Sossamon, 131 S. Ct. at 1658. Second, a state may waive its immunity impliedly; that is, by engaging in affirmative conduct during litigation sufficient to evince consent to suit. See New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004). The dispute in this case centers on waiver by conduct.

As a general proposition, waiver by litigation conduct requires a showing that a state has "voluntarily invoke[d]" the jurisdiction of the federal courts. Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd., 527 U.S. 666, 675-76 (1999); see Gunter v. Atl. Coast Line R.R., 200 U.S. 273, 284 (1906) (explaining that "where a state voluntarily become[s] a party to a

cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment"). A state voluntarily invokes federal jurisdiction when, for example, it files a claim in the bankruptcy court, Gardner v. New Jersey, 329 U.S. 565, 574 (1947), or when it chooses to intervene in federal-court litigation, Clark v. Barnard, 108 U.S. 436, 447-48 (1883).

Refined to its essence, waiver by litigation conduct represents a kind of tit for tat: a state's decision to avail itself of a federal forum as a means of garnering a material benefit that otherwise would not be available to it is deemed to betoken a willingness to subject itself to the federal court's jurisdiction with respect to the particular claim or claims at issue. See Gunter, 200 U.S. at 284. Put in colloquial terms, the state must take the bitter with the sweet.

In this instance, Rhode Island has neither asserted a federal-court claim nor intervened in an ongoing federal proceeding. It did, however, remove the action brought by the EPOs to the federal district court. The EPOs contend that, by so doing, the state waived its immunity to their embedded FLSA claim.

This contention is anchored in the Supreme Court's decision in Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002). There, an employee of a state university sued Georgia in a state court pursuant to 42 U.S.C. § 1983 and the Georgia Tort Claims Act (GTCA), Ga. Code Ann. §§ 50-

-7-

21-20 to 50-21-37. By statute, Georgia had waived its immunity with respect to GTCA claims brought in state court but not with respect to those brought in federal court. See Ga. Code Ann. § 50-21-23(b). In a deft maneuver, Georgia removed the action on the basis of the federal section 1983 claim, see 28 U.S.C. §§ 1331, 1441(a), and then asserted its federal-court immunity to the GTCA claim. Lapides, 535 U.S. at 616. The Supreme Court held that by removing the action, Georgia had voluntarily invoked federal jurisdiction and thereby had waived its federal-court immunity with respect to the GTCA claim.[2] Id. at 620.

The language of Lapides is broad, see, e.g., id. at 624, but the Supreme Court has limited its holding to its facts, id. at 617; see Magarian v. Hawkins, 321 F.3d 235, 240 n.6 (1st Cir. 2003) (stating that a "holding is, of course, limited to the facts of [the] case"). Those facts are materially different from the facts of this case.

In Lapides, removal operated in effect as an end-run around Georgia's state-court waiver of immunity. Here, by contrast, Rhode Island is immune from FLSA claims in both state and federal court. Thus, removal conferred no special advantage on the state: it would have enjoyed exactly the same immunity had it continued to litigate the claim in the state court. We believe

---

[2] The Court noted that no viable section 1983 claim remained in the case and that, therefore, the issue before it was limited to whether the removal waived the state's immunity with respect to the GTCA claim. See Lapides, 535 U.S. at 617.

-8-

that this is a crucial distinction.  After all, the <u>Lapides</u> Court

emphasized that waiver rules exist to avoid "inconsistency,

anomaly, and unfairness."  535 U.S. at 620.  The Court's finding of

waiver by litigation conduct was driven by the fact that Georgia's

invocation of federal jurisdiction had conferred the "unfair

tactical advantage[]" of circumventing its state-court immunity

waiver.  <u>Id.</u> at 621.

   We take the Supreme Court at its word and regard the

holding in <u>Lapides</u> as limited to the "context of state-law claims,

in respect to which the State has explicitly waived immunity from

state-court proceedings."  <u>Id.</u> at 617; <u>see</u> <u>Ramsey</u>, 366 F.3d at 20-

21 (explaining that the <u>Lapides</u> Court "expressly limit[ed] its

holding to cases where the state's immunity in state court has been

waived or abrogated").  Thus, <u>Lapides</u> leaves open the question of

whether removal of a federal claim effects a waiver when a state

has not waived immunity to that federal claim in its own courts.

   To answer this question, we must look to the purpose

undergirding the doctrine of waiver by litigation conduct.  Even

though its holding is not directly on point, <u>Lapides</u> has lighted

our path:

> In large part the rule governing voluntary
> invocations of federal jurisdiction has rested
> upon the problems of inconsistency and
> unfairness that a contrary rule of law would
> create.  And that determination reflects a
> belief that neither those who wrote the
> Eleventh Amendment nor the States themselves
> (insofar as they authorize litigation in

-9-

>federal courts) would intend to create that
>unfairness.

Lapides, 535 U.S. at 622 (citation omitted). This desire to avoid unfairness has animated every invocation by the Supreme Court of the waiver by conduct doctrine. For example, the Court has concluded that a state cannot assert a monetary claim in federal court while at the same time wielding immunity as a shield to block a declaratory judgment addressing the state's entitlement to the money. See Clark, 108 U.S. at 444-48. So, too, the Court has concluded that if a state elects to bring a claim for unpaid taxes in the bankruptcy court, it cannot claim immunity to pretermit the bankruptcy court's adjudication of the merits of the claim. Gardner, 329 U.S. at 573-74. In each case, an opposite result would have worked great unfairness.

Our case law concerning the waiver by litigation conduct doctrine is animated by the same desire to avoid unfairness. By way of illustration, we have held that it would be unfair to allow a state to bring a claim in federal court while simultaneously invoking sovereign immunity to shield itself from counterclaims arising out of the same transaction or occurrence. See Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 28 (1st Cir. 2001).

In the case at hand, Rhode Island's sovereign immunity defense is equally as robust in both the state and federal court. Consequently, there is nothing unfair about allowing the state to

raise its immunity defense in the federal court after having removed the action. Simply put, removal did not change the level of the playing field.

In point of fact, it is the EPOs' position that would create potential unfairness. They argue that a state waives sovereign immunity whenever it removes a case to a federal court. If that position were to prevail, a state with a colorable immunity defense to a federal claim brought against it in its own courts would face a Morton's Fork: remove the federal claim to federal court and waive immunity or litigate the federal claim in state court regardless of its federal nature. Either way, the state would be compelled to relinquish a right: either its right to assert immunity from suit or its "right to a federal forum," Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005); see Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985) (explaining that "[a] federal forum for federal claims is certainly a defendant's right").[3] We think that it would be anomalous if a doctrine born out of a concern for fairness were to be construed so as to place a sovereign defendant in such an unfair position.

To be sure, the challenge of interpreting Lapides has divided the courts of appeals. Some courts have concluded that removal does not waive a state's sovereign immunity to a claim

_____

[3] This right is not insubstantial. Immunity to a federal cause of action presents an issue of federal law, Owen v. City of Independence, 445 U.S. 622, 647 n.30 (1980), and federal courts have a special expertise in interpreting and applying federal law.

-11-

unless the state previously had waived its immunity to such a claim in state court proceedings.  See Stewart v. N. Carolina, 393 F.3d 484, 490 (4th Cir. 2005); Watters v. Wash. Metro. Area Transit Auth., 295 F.3d 36, 42 n.13 (D.C. Cir. 2002).  Others read Lapides as operating more mechanically and take the position that, regardless of the circumstances, removal always waives immunity. See Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc., 653 F.3d 448, 461 (7th Cir. 2011); Embury v. King, 361 F.3d 562, 564 (9th Cir. 2004); Estes v. Wyo. Dep't of Transp., 302 F.3d 1200, 1206 (10th Cir. 2002).

Two courts have charted a middle course, holding that removal of federal claims generally does not waive immunity from payment of money damages but does waive immunity from suit.  See Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 198-200 (3d Cir. 2008); Meyers ex rel. Benzing v. Texas, 410 F.3d 236, 252-55 (5th Cir. 2005).

In our judgment, Stewart and Watters are the best-reasoned of these decisions — and they are the most faithful to the teachings of the Lapides Court.  Furthermore, they are congruent with our own post-Lapides precedents, which as we explain below stress that waiver by litigation conduct transpires only when a state employs procedural maneuvering to gain an unfair tactical advantage.

In Rhode Island Department of Environmental Management v. United States (RIDEM), 304 F.3d 31 (1st Cir. 2002), the state was

-12-

named as a defendant in four federal administrative proceedings brought by certain DEM employees. The state asserted sovereign immunity before the administrative law judge, who rejected the assertion. Id. at 38 n.2. The state then asked the federal court to enjoin the administrative proceedings on the same immunity ground. We concluded that Lapides turned on Georgia's attempt "to regain, by a change in forum, [a] litigation advantage [immunity] that the state ha[d] already renounced by a general statute." Id. at 49. Because Rhode Island had made no similar attempt "to reverse its waiver by a change in forum," id., its assertion of immunity in federal court gave it no "unseemly litigation advantage," id. at 50. We therefore rejected the claim of waiver by litigation conduct, reiterating that "consistency and fairness are our guideposts" in such an inquiry. Id.

We reached a comparable result in Ramsey. There, New Hampshire sued in federal court to overturn an administrative arbitration award. 366 F.3d at 13. The state's primary basis for challenging the award was its assertion of immunity from damages. The state's adversaries contended that, by mounting this challenge in federal court, the state had waived its damages immunity. We found no waiver because the state had "consistently asserted its immunity from damages" and, therefore, had "gained no unfair advantage" by invoking federal jurisdiction. Id. at 21.

Taken together, RIDEM and Ramsey indicate that when a state has maintained a consistent, across-the-board position

-13-

regarding its immunity, the invocation of federal jurisdiction to enforce that immunity does not effect a waiver. This reasoning is harmonious with longstanding Supreme Court precedent, which has concluded that a voluntary invocation of federal jurisdiction waives immunity only where a contrary finding would cultivate unfair consequences. See, e.g., Lapides, 535 U.S. at 622.

That ends this aspect of the matter. Because Rhode Island has consistently maintained its immunity to FLSA claims (wherever brought), the state did not waive its immunity by removing the instant action to federal court.[4] It follows that the FLSA claim was appropriately dismissed.

## III. THE REMAINING CLAIMS

The court below granted summary judgment in the state's favor on the EPOs' remaining claims. The EPOs challenge this ruling. They are fishing in an empty stream.

Orders granting summary judgment engender de novo review. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st

---

[4] At oral argument, the EPOs suggested that the state may have gained an unfair tactical advantage through removal because the federal court had ruled in its favor in some of the earlier suits. This suggestion strikes us as profoundly flawed. To begin, we have grave doubts whether a history of favorable rulings in other federal-court proceedings can form the basis for an unfair litigation advantage sufficient to convert removal into a waiver by litigation conduct. In all events, we need not resolve this question because the EPOs did not raise the point either in the district court or in their briefs on appeal. The argument is, therefore, waived. See Uno v. City of Holyoke, 72 F.3d 973, 985 (1st Cir. 1995); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990).

-14-

Cir. 1999). When conducting that review, we take the facts of record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Id. We will affirm only if the record, so viewed, discloses that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The EPOs' remaining claims are idiosyncratic, interstitial, and fact-specific. The district court analyzed them with great care, explained its reasoning in exhaustive detail, and reached a series of unarguably correct conclusions. See Bergemann II, 2011 WL 1042748, at *7-10. Given this impressive body of work, the appeal before us fits comfortably within the compass of the familiar tenet "that when a trial court accurately sizes up a case, applies the law faultlessly to the discerned facts, decides the matter, and articulates a convincing rationale for the decision, there is no need for a reviewing court to wax longiloquent." Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 2 (1st Cir. 2004).

Belaboring this point would serve no useful purpose. The district court's conclusion that the EPOs have been appropriately compensated for their on-call lunch breaks, Bergemann II, 2011 WL 1042748, at *7-9, is plainly correct. So, too, is the court's conclusion that the state's retirement contribution calculations properly disregard the extra holiday pay earned by the EPOs. See id. at *9-10. Finally, the court perspicaciously recognized that,

-15-

without a showing of improper conduct on the part of the state, the EPOs lack a viable unjust enrichment claim.  See id. at *7-9.  We could rephrase the district court's cogent analysis, but we doubt that we could improve upon it; and we see no point in writing about these matters in extenso merely to hear our own words resonate. Consequently, we affirm the disposition of the remaining claims for substantially the reasons set forth below.

## IV.   CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the judgment entered by the district court.


**Affirmed**.