**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BETH A. BODI,
                    *Plaintiff-Appellee*,

v.

SHINGLE SPRINGS BAND OF
MIWOK INDIANS; SHINGLE
SPRINGS TRIBAL HEALTH;
TIMOTHY ADAMS, as current
Chairperson of the Shingle
Springs Tribal Health Board,
                    *Defendants-Appellants.*

No. 14-16121

D.C. No.
2:13-cv-01044-
LKK-CKD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted May 12, 2016
San Francisco, California

Filed August 8, 2016

Before: M. Margaret McKeown, Robert D. Sack[*],
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland

## SUMMARY[**]

### Indian Law

The panel reversed the district court's denial of a motion to dismiss claims under the Family and Medical Leave Act and California law on the ground of tribal sovereign immunity.

Following the Eleventh Circuit, the panel held that a federally recognized Indian tribe does not waive its sovereign immunity from suit by exercising its right to remove to federal court a case filed against it in state court. The panel concluded that the act of removal does not express the clear and unequivocal waiver that is required for a tribe to relinquish its immunity.

The panel remanded the case, leaving it to the district court to address on remand any remaining immunity issues.

---

[*] The Honorable Robert D. Sack, Senior Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Christopher F. Wohl (argued), Palmer Kazanjian Wohl Hodson LLP, Sacramento, California; Paula Yost, Sandra R. McCandless and Ian Barker, Dentons US LLP, San Francisco, California; for Defendants-Appellants.

David Nied (argued) and Wendy L. Hillger, Ad Astra Law Group, LLP, San Francisco, California, for Plaintiff-Appellee.

Richard D. Monkman, Harry R. Sachse and Peng Wu; Sonosky, Chambers, Sachse, Miller & Munson, LLP, Juneau, Alaska; for Amici Curiae Arctic Slope Native Association, LTD and Puyallup Tribe.

---

**OPINION**

FRIEDLAND, Circuit Judge:

This appeal requires us to decide whether a federally recognized Indian tribe waives its sovereign immunity from suit by exercising its right to remove to federal court a case filed against it in state court. This question has divided the district courts, and it has been reached by only one of our sister circuits, which held that removal does not, standing alone, waive tribal immunity. *See Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1206–08 (11th Cir. 2012). We now follow the lead of the Eleventh Circuit and hold that the act of removal does not express the clear and unequivocal waiver that is required for a tribe to relinquish its immunity from suit. Because the district court held otherwise, we reverse.

## I.

The Shingle Springs Band of Miwok Indians (the "Tribe") is a federally-recognized Indian tribe located on the Shingle Springs Rancheria in California.[1] Since about 1995, the Tribe has owned and operated a full-service health clinic. The clinic operates under the name Shingle Springs Tribal Health Program (the "Health Program") and is run by the Shingle Springs Tribal Health Board (the "Health Board"), whose nine directors are all members of the Tribe. Among its duties, the Health Board is responsible for the hiring and termination of the clinic Executive Director.

Plaintiff-Appellee Beth A. Bodi is a member of the Tribe. Bodi began working at the clinic in 1997 and became its Executive Director in November 2001. In August 2012, after she attempted to take job-protected leave under the Family Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601–2654, on account of successive severe health conditions, the Health Board terminated Bodi's employment by way of a letter from its Chairperson. The Tribe later rehired Bodi as Executive Assistant to the Tribal Chairman, but she was terminated from that position in April 2013 after sending a communication to tribal officials complaining about her earlier termination and noting her willingness to seek redress in state court.

---

[1] The district court decided Defendants' motion to dismiss with respect to the waiver-by-removal issue based solely on the pleadings, and we therefore "take as true the allegations of the complaint" for purposes of appeal. *Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011). The facts presented here are taken from the operative complaint or are otherwise uncontested.

Bodi filed suit in California state court, asserting claims against the Tribe under the FMLA and California law. The Tribe timely removed the action to the United States District Court for the Eastern District of California on the basis of that court's federal question jurisdiction over the FMLA claim and supplemental jurisdiction over the state law claims. One week later, the Tribe moved to dismiss the lawsuit under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that the Tribe's sovereign immunity protected it from suit. In lieu of a response, Bodi amended her complaint, adding the Health Program, the Health Board, and the Health Board's Chairperson[2] as defendants.

Defendants filed a renewed motion to dismiss based on tribal immunity.[3] The district court denied Defendants' motion on the ground that the Tribe had unequivocally waived its immunity by removing the action to federal court. Because it found waiver based on removal, the court did not reach additional grounds for loss of tribal immunity pressed by Bodi, including that Congress abrogated tribal immunity through the FMLA and that the Tribe had waived its immunity through Tribal Council resolutions to obtain federal funding to build the health clinic. The court also declined to reach Defendants' additional defense that the

---

[2] The operative complaint makes clear that the Chairperson is sued in an official capacity only.

[3] The parties use terms such as "tribal immunity," "tribal sovereign immunity," and "the Tribe's sovereign immunity" interchangeably in their briefing, as do we herein.

Tribe's exclusive right of self-governance barred Bodi's claims for injunctive relief under the FMLA.[4]

Acknowledging that district courts in this circuit were split on the waiver-by-removal question,[5] the district court expressed its hope that Defendants would "appeal [its] ruling so that a higher court may definitively resolve the issue." *See Bodi v. Shingle Springs Band of Miwok Indians*, 19 F. Supp. 3d 978, 987 (E.D. Cal. 2014). Defendants did so, and because the "denial of a claim of tribal sovereign immunity is immediately appealable" even absent a final judgment, *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007), that issue is now squarely before us.

## II.

We review de novo a district court's decision on a motion to dismiss for lack of subject matter jurisdiction. *See Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013). We

---

[4] The district court did, however, dismiss all claims against the Health Program because Bodi failed to controvert evidence that the entity had no legal existence independent of the Tribe and the Health Board. That ruling has not been appealed.

[5] *Compare Ingrassia v. Chicken Ranch Bingo & Casino*, 676 F. Supp. 2d 953, 961 (E.D. Cal. 2009) (holding that "removal to federal court does not waive tribal sovereign immunity"), *and Sonoma Falls Developers, LLC v. Dry Creek Rancheria Band of Pomo Indians of Cal.*, No. C-01-4125 VRW, 2002 WL 34727095, at *6–7 (N.D. Cal. Dec. 26, 2002) (same), *with State Eng'r of the State of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.*, 66 F. Supp. 2d 1163, 1173 (D. Nev. 1999) (holding that the tribal defendant's removal of the case "amount[ed] to a clear and unequivocal waiver of immunity" in federal court), *vacated on reconsideration on other grounds*, 114 F. Supp. 2d 1046 (D. Nev. 2000).

likewise review de novo whether an Indian tribe has waived its immunity from suit. *See id.*; *Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 805 (9th Cir. 2001).

## III.

The gravamen of this appeal is the question whether a tribe's removal of a case from state to federal court constitutes, in and of itself, a valid waiver of its immunity from suit.[6] The Eleventh Circuit, the only one of our sister circuits to have reached this issue, held that it does not. *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1206–08 (11th Cir. 2012). Application of settled tribal immunity principles and consideration of the fairness and administrative concerns at stake lead us to the same conclusion reached by the Eleventh Circuit: that a tribe's exercise of its right to remove a case to federal court, standing alone, does not effect a waiver of its immunity from suit.

## A.

The doctrine of tribal sovereign immunity derives from the status of Indian tribes as "separate sovereigns pre-existing the Constitution." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)); *see also Santa Clara Pueblo*, 436 U.S. at 55 ("Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." (quoting

---

[6] The parties agree that the immunity defenses of the Health Board and its Chairperson are derivative of the Tribe's immunity so that, if the Tribe waived its immunity, they must be found to have waived theirs as well.

*Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559 (1832), *abrogation on other grounds recognized by Nevada v. Hicks*, 533 U.S. 353, 361–62 (2001))).  "Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'"  *Bay Mills*, 134 S. Ct. at 2030 (quoting *Santa Clara Pueblo*, 436 U.S. at 58).  The Supreme Court has characterized that immunity as "a necessary corollary to Indian sovereignty and self-governance," *id.* (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. World Eng'g, P.C.*, 476 U.S. 877, 890 (1986)), and we employ a "strong presumption against [its] waiver," *Demontiney*, 255 F.3d at 811.

There are only two ways in which a tribe may lose its immunity from suit.  Congress may abrogate tribal immunity, because, "[a]s dependents, the tribes are subject to plenary control by Congress."  *Bay Mills*, 134 S. Ct. at 2030.  Or, of relevance to this appeal, a tribe may itself waive immunity.  *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe* (*Potawatomi*), 498 U.S. 505, 509 (1991).  It is well settled that "a waiver of [tribal] sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  *Santa Clara Pueblo*, 436 U.S. at 58 (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)).[7]  That expression must

---

[7] Although *Santa Clara Pueblo* was addressing congressional abrogation of immunity, *see* 436 U.S. at 58–59, we have made clear that its proscription of waiver-by-implication also applies to expressions by the tribes themselves, *see, e.g.*, *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (reasoning that a tribe's statements in an employment application "[a]t most . . . might imply a willingness to submit to federal lawsuits, but waivers of tribal sovereign immunity may not be implied").

also manifest the tribe's intent to surrender immunity in "clear" and unmistakable terms. *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001) (quoting *Potawatomi*, 498 U.S. at 509).[8]  Thus, absent a clear and unequivocally expressed waiver by a tribe or congressional abrogation, "[s]uits against Indian tribes are . . . barred." *Potawatomi*, 498 U.S. at 509; *see also Bay Mills*, 134 S. Ct. at 2030–31 ("[W]e have time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional authorization (or a waiver)." (second alteration in original) (quoting *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998))).

## B.

The question here is thus whether, by removing this case from state to federal court, the Tribe clearly and unequivocally expressed its intent to waive its immunity from suit.  We hold that it did not.

### 1.

---

[8] *C & L Enterprises*'s clarification that a tribe need not use any particular words to effect a clear waiver did not alter the settled principle that the waiver must be explicit and cannot be implied.  *See* 532 U.S. at 420 (rejecting the view that a waiver of tribal immunity "is implicit rather than explicit only if [the] waiver . . . use[s] the words 'sovereign immunity'" (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659–60 (7th Cir. 1996))); *see also Demontiney*, 255 F.3d at 812–13 & n.5 (holding that provisions in a contract "establish[ed] only the Tribe's willingness to face suit in tribal court and not an *explicit* waiver of tribal immunity" like that in *C & L Enterprises* (emphasis added) (internal quotation marks omitted)).

It is undisputed that the Tribe did not expressly state its intent to waive its immunity when it removed the case; to the contrary, it asserted its immunity defense promptly upon removal to federal court and neither it, nor any Defendant, ever voiced an intent to litigate on the merits.**[9]** The only way in which removal can constitute a waiver, then, is if the voluntary act of removal is tantamount to an express waiver of tribal immunity. Bodi urges us to hold that it is, but we are not persuaded.

By filing a lawsuit, a tribe may of course "consent[] to the court's jurisdiction to determine the claims brought" and thereby agree to be bound by the court's decision on those claims. *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir. 1995) (quoting F. Cohen, *Handbook of Federal Indian Law* 324 (1982)); *see also McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989) ("Initiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy."). By consenting to the court's jurisdiction to determine its own claims, however, a tribe does not automatically waive its immunity as to claims that could be asserted against it, even as to "related matters . . . aris[ing] from the same set of underlying facts." *McClendon*, 885 F.2d at 630. The Supreme Court has thus emphasized that a tribe's initiation of a lawsuit for injunctive relief does not waive its immunity

---

**[9]** Bodi has not argued that any language in the Notice of Removal clearly expresses an intent to waive immunity, and we find no such language. The Notice of Removal merely expressed that the Tribe had a right to remove under 28 U.S.C. § 1441 and intended to exercise it. If the Notice had included a clear and unequivocal statement that the Tribe was waiving its immunity, such a statement may well have been dispositive of our analysis. Because the Notice in this case contained no such statement, Bodi argues that it is instead the *act* of removal that clearly expresses the Tribe's intent to waive its immunity.

to counterclaims, including compulsory ones. *Potawatomi*, 498 U.S. at 509; *see also United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513 (1940) ("Possessing [] immunity from direct suit, we are of the opinion [that a tribe] possesses a similar immunity from cross-suits."); *McClendon*, 885 F.2d at 630 ("[W]e consistently have held that a tribe's participation in litigation does not constitute consent to counterclaims asserted by the defendants in those actions."). And we have held that a tribe's voluntary participation in administrative proceedings does not waive its immunity in a subsequent court action filed by another party seeking review of the agency proceedings. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (holding that tribes "did not waive their immunity by intervening in . . . administrative proceedings" because "[a]ny waiver must be unequivocal and may not be implied"); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) (holding that tribe's "voluntary participation" in administrative proceedings "is not the express and unequivocal waiver of tribal immunity that we require in this circuit").

Like filing a complaint, which invites the court to resolve a specific issue but does not waive immunity as to other issues, the Tribe's removal and immediate assertion of immunity invoked the court's jurisdiction for the limited purpose of resolving the Tribe's "quasi-jurisdictional" immunity defense. *Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015) (alteration omitted) (quoting *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989)). The Tribe's action is in this way analogous to a civil litigant's filing a motion to dismiss for lack of subject matter jurisdiction. The litigant thereby invites the court to exercise that jurisdiction required to determine its own jurisdiction. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is

familiar law that a federal court always has jurisdiction to determine its own jurisdiction."). It would defy logic to suggest that, in doing so, the Tribe clearly manifested its intent to waive the very immunity defense that it asserts.

If anything is to be inferred from the Tribe's removal and immediate assertion of immunity, it is that the Tribe preferred to have its immunity defense heard in a federal forum, not that it intended to waive its immunity and to have the claims filed against it decided on their merits. But even if it were possible to read into the act of removal some intent by the Tribe to relinquish its immunity to suit, we could not uphold a waiver on that basis because "waivers of tribal sovereign immunity may not be implied." *Allen*, 464 F.3d at 1047.

2.

To resist this result, Bodi urges us to extend the Supreme Court's decision in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), in which the Court held that the defendant State waived its Eleventh Amendment immunity through the "affirmative litigation conduct" of "remov[ing] a case to federal court," *id.* at 616–17. The Eleventh Circuit in *Contour Spa* rejected a similar attempt to extend *Lapides* from the Eleventh Amendment context to the tribal immunity context, 692 F.3d at 1204–08, and we do as well.

In *Lapides*, a professor brought suit in Georgia state court against his employer, the Georgia state university system, and various university officials, alleging violations of state and federal law based on the placement of allegations of sexual harassment in his personnel files. 535 U.S. at 616. The Georgia legislature had passed a statute expressly waiving the State's sovereign immunity to state law claims

filed in state court.  *See id.*; Ga. Code Ann. § 50-21-23. Georgia removed the case to federal court based on the federal claim, then promptly moved to dismiss the entire suit on the basis of its Eleventh Amendment immunity. *Lapides*, 535 U.S. at 616.

At the outset, the Supreme Court determined that the sole federal claim, which sought monetary damages under 42 U.S.C. § 1983, was invalid because the State was "not a 'person' against whom a § 1983 claim for money damages might be asserted."  *Id.* at 617.  As a consequence, the Supreme Court began its opinion by carefully "limit[ing]" its decision to the peculiar procedural circumstances of that case—that is, "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings."  *Id.*; *see also id.* at 617–18 (emphasizing that the Court did not "need [to] address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court").

After expressing this limitation, the Court used some more general language in discussing the consequences of the State's decision to remove the case.  The Court reasoned that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial Power of the United States' extends to the case at hand."  *Id.* at 619.  Observing that it had previously held that a "State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity," *id.* (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)), the Court reasoned that a State similarly expresses its intent to "voluntarily invoke[]

the federal court's jurisdiction" by "voluntarily agree[ing] to remove the case to federal court." *Id.* at 620. Unable to discern "something special about removal or about this case," the Court concluded that the "general legal principle requiring waiver" when a State voluntarily invokes judicial authority "ought to apply."[10] *Id.*

As a result of the tension between *Lapides*'s express limitations on its own holding and this general language, courts are divided on whether *Lapides* indicates that a State defendant's removal to federal court waives its Eleventh Amendment immunity if the State has not waived its immunity to suit in state court. *See Contour Spa*, 692 F.3d at 1205–06 (citing cases).[11]  Here, the Tribe—unlike the

---

[10] The Supreme Court rejected the State's argument that the rule was changed by Eleventh Amendment cases that "have required a clear indication of the State's intent to waive its immunity" because the State's "act—removal—is clear." *Lapides*, 535 U.S. at 620 (citation omitted).

[11] Some circuits have opted for a narrow construction, "tak[ing] the Supreme Court at its word and regard[ing] the holding in *Lapides* as limited to the 'context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings.'" *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 341 (1st Cir. 2011) (quoting *Lapides*, 535 U.S. at 617). Others have read *Lapides* to "state a more general rule." *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 460–71 (7th Cir. 2011) (relying largely on *Lapides* to hold that the State plaintiff waived its immunity to counterclaims filed against it in federal court); *see also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242 (5th Cir. 2005) (discerning "no evident basis in law or judicial administration for severely limiting [*Lapides*'s] general principles . . . to a small sub-set of federal cases[,] including only state-law claims in respect to which a state has waived immunity therefrom in state court"); *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1205 n.1, 1206 (10th Cir. 2002) (holding that State defendant waived Eleventh Amendment immunity to a federal claim by removing to federal court). Still others have held that, by removing a

State of Georgia in *Lapides*—asserts that it retains its immunity from suit in state court as well as federal court.[12]

As the Eleventh Circuit observed in *Contour Spa*, we need not resolve here the question how broadly to read *Lapides* with respect to a State defendant's removal of a suit to federal court, because we hold that *Lapides*'s waiver-through-removal reasoning does not apply at all in the context of tribal immunity. *Cf. Contour Spa*, 692 F.3d at

---

case, a State defendant does not waive its general common law immunity from suit, regardless of whether it would thereby waive its Eleventh Amendment immunity under *Lapides*. *See, e.g.*, *Beaulieu v. Vermont*, 807 F.3d 478, 483–89 (2d Cir. 2015).

In *Embury v. King*, 361 F.3d 562 (9th Cir. 2004), we extended *Lapides* in a limited fashion to hold that a State defendant's removal waived its immunity to federal as well as state law claims, including those claims pled in an amended complaint after removal, *id.* at 564–65. Although, in *Embury*, we characterized *Lapides* broadly as setting forth a "straightforward, easy-to-administer rule" that "[r]emoval waives Eleventh Amendment immunity," *id.* at 566, we did not explicitly consider whether it applied when a State defendant retained its immunity from suit in state court, as it appears the State defendants there had not done. *See id.* at 564 (noting that the State defendants had "concede[d] that, under *Lapides*, they [were] stuck with federal jurisdiction over the state law claims"); *see also Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 662–63 (9th Cir. 2009) ("Under *Embury*, the Director, having waived state court immunity, also waived federal court sovereign immunity by voluntarily removing the action."), *vacated on other grounds sub. nom Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012). We have since observed that the question whether *Lapides*'s rule applies when a State defendant has not consented to suit in its own courts remains unresolved in this circuit. *See Indep. Living Ctr.*, 572 F.3d at 662 n.20.

[12] As discussed below, the Tribe conceded at oral argument that it has waived its immunity from suit in relevant respects in its own tribal court, but Bodi chose not to file suit in that forum.

1206 (declining to "enter into this conflict . . . over how best to read *Lapides* with respect to a state's removal of a case" because "an Indian tribe's sovereign immunity is not the same thing as a state's Eleventh Amendment immunity, and *Lapides* in no way addressed tribal sovereign immunity").

Tribal immunity is not synonymous with a State's Eleventh Amendment immunity, and parallels between the two are of limited utility. *See, e.g.*, *Three Affiliated Tribes*, 476 U.S. at 890 ("Of course, because of the peculiar 'quasi-sovereign' status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy."). Importantly, States can waive their Eleventh Amendment immunity through litigation conduct that would not effect a waiver of tribal sovereign immunity. For example, a State's filing of a claim may waive its Eleventh Amendment immunity to counterclaims that arise from the same transaction or occurrence, at least in the bankruptcy context. *See In re Lazar*, 237 F.3d 967, 978 (9th Cir. 2001) (holding that "when a state . . . files a proof of claim in a bankruptcy proceeding, the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim"). A tribe, in contrast, does not waive its immunity to a compulsory counterclaim by voluntarily filing suit. *Potawatomi*, 498 U.S. at 509–10. In addition, while waiver cannot be implied with respect to tribal immunity, it can be implied under certain circumstances with respect to States' Eleventh Amendment immunity. *See Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("Express waiver is not required; a state 'waive[s] its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity.'" (first quoting *In re Bliemeister*,

296 F.3d 858, 861 (9th Cir. 2002); then quoting *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999))).

Indeed, recognizing the important distinctions between the two forms of immunity, *Lapides* itself suggested that its holding was specific to the Eleventh Amendment context. The Supreme Court explained of cases about federal immunity and tribal immunity that

> [t]hose cases . . . do not involve the Eleventh Amendment—a specific text with a history that focuses upon the State's sovereignty vis-á-vis the Federal Government.  And each [such] case involves special circumstances not at issue here, for example, an effort by a sovereign (*i.e.*, the United States) to seek the protection of its own courts (*i.e.*, the federal courts), or an effort to protect an Indian tribe.

*Lapides*, 535 U.S. at 623.  These comments from the Supreme Court indicate that "waiver rules applicable to states may not apply in the same way to Indian tribes." *Contour Spa*, 692 F.3d at 1208.  Like the Eleventh Circuit, we decline to interpret *Lapides* as extending beyond States' Eleventh Amendment immunity.

Comparisons to foreign sovereign immunity also do not help Bodi.  Bodi argues that the differences between tribal immunity and the immunity enjoyed by foreign nations suggest that a tribe waives its immunity by removing to federal court.  In refusing to extend *Lapides* to the tribal immunity context, the Eleventh Circuit in *Contour Spa* reasoned in part that tribal sovereign immunity is instead "more analogous to foreign sovereign immunity," and that "[t]he significance of the comparison inheres in the fact that *foreign* sovereigns do not waive their sovereign immunity by

removing a case to federal court." *Id.* at 1206 (citing 28 U.S.C. § 1441(d), *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1047 n.4 (11th Cir. 2001), and *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 289 (5th Cir. 1993) (holding that removal "by a foreign sovereign is explicitly authorized by 28 U.S.C. 1441(d) and clearly cannot constitute waiver")). Bodi asserts that this comparison should cut the other way because Congress provided foreign states an absolute statutory right of removal through the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1441(d), but Congress created no such express removal right for tribes. Specifically, Bodi points out that foreign states have a statutory right to remove "[a]ny civil action" brought against them to federal court, *id.*, while tribes only have the same right afforded to all other litigants to remove a case filed against them to federal court based on diversity or federal question jurisdiction, *id.* § 1441(a).

This distinction misconceives tribal immunity principles. Congress, of course, need not affirmatively preserve tribal immunity; rather "[a]s separate sovereigns pre-existing the Constitution," Indian tribes possess immunity from suit unless expressly abrogated or waived. *Santa Clara Pueblo*, 436 U.S. at 56–58. Nothing in the removal statute, 28 U.S.C. § 1441, abrogates tribes' sovereign immunity. And the absence of a dedicated removal provision for tribes says nothing about whether a tribe's decision to invoke its general removal right constitutes a clear waiver of immunity. Indeed, the dedicated removal provision for foreign states, 28 U.S.C. § 1441(d), like the general removal provision for all other parties, 28 U.S.C. § 1441(a), says nothing explicit about loss or preservation of immunity. Our circuit has not yet reached the question whether foreign states waive their sovereign immunity through removal and what, if any, bearing the

dedicated removal provision has on that question, so Bodi's analogies to foreign sovereign questions get her nowhere.[13]

We are unable to discern any unequivocal expression of the Tribe's intent to waive its immunity in its assertion of its statutory removal right.  Ultimately, the absence of such an expression is dispositive of the tribal waiver-by-removal question.

## C.

We are further persuaded that this result is correct because of the likely unfairness and administrative challenges that a contrary holding would entail.  In concluding that the State of Georgia had waived its immunity by removal, *Lapides* was motivated by the desire

---

[13] The dedicated removal provision was enacted as part of the Foreign Sovereign Immunities Act, Pub. L. No. 94-583, 90 Stat. 2891 (1976), through which Congress also narrowed foreign sovereign immunity by providing for waiver by implication, *see* 28 U.S.C. § 1605(a)(1) (providing that a foreign state is not immune to federal or state court jurisdiction if it "has waived its immunity either explicitly or by implication"); *see also Corporacion Mexicana de Servicios Maritimios, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996) (explaining that this "waiver exception is narrowly construed").  Those of our sister circuits that have addressed waiver-by-removal for foreign sovereigns were tasked with determining whether a foreign state waives its immunity *by implication* when it exercises its removal right.  *See Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1291 n.24 (11th Cir. 1999) (stating that the foreign state defendant's "participation in the litigation, such as removing the case to federal court, . . . did not constitute an implicit waiver"); *Rodriguez*, 8 F.3d at 287 (explaining that the plaintiff "ha[d] chosen to rely solely on the implied waiver exception").  Tribes, as we have explained, do not waive their immunity by implication, so the foreign sovereign removal analogy is inapposite.

to avoid "inconsistency, anomaly, and unfairness" and to prevent the "selective use of 'immunity' to achieve litigation advantages." 535 U.S. at 620. As *Contour Spa* recognized, these concerns cut the other way in the tribal immunity context. 692 F.3d at 1207–08.

First, we join the Eleventh Circuit in its concern that it would be unfair to put tribes to a choice between asserting their right to remove to federal court federal claims filed against them and asserting their tribal immunity defense. *See Contour Spa*, 692 F.3d at 1207. If a tribe had to litigate its immunity defense in state court to avoid waiver through removal, and that immunity defense proved to be completely or partially unsuccessful, the tribe would almost certainly have missed the statutory 30-day deadline to remove the case to federal court. *See* 28 U.S.C. § 1446(b).[14] As a result, a tribe sued in state court on a federal claim to which it possesses a colorable immunity defense

> would face a Morton's Fork: remove the
> federal claim to federal court and waive
> immunity or litigate the federal claim in state
> court regardless of its federal nature. Either
> way, the [tribe] would be compelled to
> relinquish a right: either its right to assert

---

[14] We express no opinion on whether a tribe would waive its removal right by first moving to dismiss on the basis of sovereign immunity in state court. *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1995) ("A party, generally the defendant, may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum.").

immunity from suit or its "right to a federal forum."[15]

*Bergemann*, 665 F.3d at 342 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005)).  The Eleventh Circuit could find "no sound basis in law or logic for forcing an Indian tribe to make this choice" between asserting its removal right and its sovereign immunity defense, *Contour Spa*, 692 F.3d at 1207, and we cannot either.

Also problematic is the race to the courthouse that Bodi's position on tribal waiver-by-removal would likely inspire.  There are reasons why a tribe may prefer to litigate in federal court.  "[T]ribal immunity 'is a matter of federal law," *Bay Mills*, 134 S. Ct. at 2031 (quoting *Kiowa Tribe*, 523 U.S. at 756), and, as such, tribes may wish to avail themselves, when possible,[16] of the "experience, solicitude, and hope of uniformity that a federal forum offers on [such] federal issues," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (discussing removability of claims "implicat[ing] significant federal issues"); *see Contour Spa*, 692 F.3d at 1207 (recognizing that tribes "have

---

[15] This concern did not exist in *Lapides* because the State had already waived its immunity in state court.  The Second Circuit in *Beaulieu* and the First Circuit in *Bergemann* refused to extend *Lapides* to situations in which the State defendants remained immune in state court, in part because of the unfairness of forcing States to choose between asserting their removal right and asserting their immunity defense.  *See Beaulieu*, 807 F.3d at 486–87; *Bergemann*, 665 F.3d at 342–43.

[16] A tribal immunity defense does not provide an independent basis for federal jurisdiction.  *See Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) (per curiam).  The Tribe in this case was instead able to access a federal forum to litigate its immunity defense because Bodi's FMLA claim provided for original federal jurisdiction.

an interest in a uniform body of federal law in [the] area" of tribal immunity). In addition, state courts have long been at least perceived as "inhospitable to Indian rights." *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 566 (1983).

Faced with losing the opportunity to have their immunity defenses to federal claims heard in federal court if they were sued in state court, tribes would be strongly incentivized to file an affirmative suit for declaratory or injunctive relief in federal court in order to preserve their ability to assert their federal immunity defense in that forum to any counterclaim for damages. This is because, as indicated above, a tribe does not waive its immunity to related—and even compulsory—counterclaims by filing a suit for injunctive or declaratory relief. *See Potawatomi*, 498 U.S. at 509. Thus, for instance, in this case, once Bodi threatened to sue, Defendants would have been incentivized to rush to the federal courthouse doors to file a suit for declaratory relief that the FMLA does not apply to the instant dispute, so that the Tribe could then assert in that forum its federal immunity defense to any counterclaim for damages filed by Bodi. In resolving a different jurisdictional dispute involving tribal rights, the Supreme Court was swayed by the overriding need to avoid such "wasteful" litigation and an "unseemly and destructive race to see which forum can resolve the same issues first." *San Carlos Apache Tribe*, 463 U.S. at 567. That concern militates against recognizing waiver-by-removal here.

Finally, we note that our holding does not leave plaintiffs like Bodi without a forum for redress. Defendants conceded at oral argument that, like the State of Georgia in *Lapides*, the Tribe would likely have been amenable to Bodi's suit in

its own court system—here, Shingle Springs Tribal Court.**[17]** *Cf.* Shingle Springs Tribal Court Ordinance, art. II, ch. 4, § 1(b) (2013) (setting forth the Tribe's express waiver of sovereign immunity in tribal court for various purposes, including labor relations); William Wood, *It Wasn't an Accident: The Tribal Sovereign Immunity Story*, 62 Am. U. L. Rev. 1587, 1666 (2013) (recognizing that "many (though not all) Indian tribes make tribal court remedies available for claims against their governments"); Catherine T. Struve, *Tribal Immunity and Tribal Courts*, 36 Ariz. St. L.J. 137, 137, 155–61 (2004) (concluding based on "a survey [of] caselaw and constitutional and statutory provisions from selected tribes . . . that many Indian nations currently provide significant remedies, in tribal court, for claims alleging misconduct by tribal governments").

## IV.

We join the Eleventh Circuit in holding that an Indian tribe's removal of a case from state to federal court does not, in and of itself, effect a waiver of its tribal immunity. We therefore reverse the district court's contrary holding. We leave it to the district court to address on remand any remaining immunity issues in this case, such as whether Congress abrogated tribal immunity through the FMLA, whether the Tribe explicitly waived its immunity through some means other than removal, and whether the Tribe's immunity, if intact, protects the Health Board and the Health Board's Chairperson. If the tribal immunity defense is not dispositive as to all Defendants, the district court also should

---

**[17]** Defendants expressed no position on whether Bodi could still bring her claims in tribal court or whether statute-of-limitations hurdles may now exist, and we do not either.

address on its merits Defendants' separate defense that the FMLA is not applicable to the dispute at hand.

**REVERSED and REMANDED.**