**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

QUINAULT INDIAN NATION,
            *Plaintiff-Appellee*,

                    v.

MARY LINDA PEARSON,
Administrator Ad Prosequendum for
the estate of Edward A. Comenout,
            *Defendant-Appellant*.

No. 15-35263

D.C. No.
3:10-cv-05345-
BHS

QUINAULT INDIAN NATION,
            *Plaintiff-Appellee*,

                    v.

MARY LINDA PEARSON,
Administrator Ad Prosequendum for
the estate of Edward A. Comenout,
            *Defendant*,

                  and

ROBERT R. COMENOUT, SR.,
            *Defendant-Appellant*.

No. 15-35267

D.C. No.
3:10-cv-05345-
BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Submitted June 9, 2017*
Seattle, Washington

Filed August 29, 2017

Before: M. Margaret McKeown, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY**

**Tribal Sovereign Immunity**

In an action brought by the Quinault Indian Nation
alleging a scheme to defraud the Nation of cigarette taxes,
the panel affirmed the district court's dismissal of
counterclaims as barred by the Nation's sovereign
immunity.

The panel held that if brought in a separate suit against
the Nation, the counterclaims would be barred by sovereign
immunity. Asserting the claims as counterclaims did not

---

* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

** This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

change the sovereign-immunity analysis. The panel concluded that the Nation did not waive its sovereign immunity because it filed the underlying suit but took no further action that unequivocally waived its immunity to the counterclaims, and the counterclaims did not qualify as claims for recoupment.

## COUNSEL

Robert E. Kovacevich, Spokane, Washington; Randal B. Brown, Covington, Washington; Aaron L. Lowe, Spokane, Washington; for Defendants-Appellants.

Rob Roy Smith, Kilpatrick Townsend & Stockton LLP, Seattle, Washington, for Plaintiffs-Appellees.

## OPINION

McKEOWN, Circuit Judge:

Once again, the issue of tribal sovereign immunity and cigarette taxes is back in the federal courts. In this iteration, the Quinault Indian Nation (the "Nation") sued Edward A. Comenout, Jr.; Robert R. Comenout, Sr.; and other defendants for engaging in a scheme to defraud the Nation of taxes. When the Nation later asked the district court to dismiss its action, Edward's estate (the "Estate") sought to keep the litigation alive, asserting that maintaining the suit was necessary to litigate its counterclaims against the Nation.

The district court dismissed the counterclaims as barred by the Nation's sovereign immunity. Because the court

correctly held that the Nation retains its sovereign immunity as to the counterclaims, these claims were properly dismissed. We agree that the Estate cannot hold up dismissal of the suit. We affirm.

## Background

Edward Comenout, now deceased, was an enrolled member of the Quinault Indian Nation, a federally recognized Indian tribe. Beginning in 1971, he operated a convenience store, the Indian Country Store, on land held in trust by the United States in Puyallup, Washington. The store, which is now run by his brother Robert Comenout, sells cigarettes and tobacco products.

For years, the Comenouts have been embroiled in litigation about whether they must pay cigarette taxes. They have contested the authority of the State of Washington and the Nation to tax them at every turn. For example, in criminal proceedings initiated in 2008, they contended that they are exempt from Washington's cigarette tax, but the Washington Supreme Court disagreed. *State v. Comenout*, 267 P.3d 355, 358 (Wash. 2011).[1] Similarly, in litigation with the Nation, including the lawsuit on appeal here, the Comenouts have continually disputed the Nation's ability to collect cigarette taxes pursuant to an agreement with Washington. *See, e.g.*, *Comenout v. Whitener*, No. 15-35261, 2017 WL 2591272 (9th Cir. June 15, 2017); *Comenout v. Wash. State Liquor Control Bd.*, 195 Wash. App. 1035 (2016). The legal battles rage on.

In this round, the Nation brought suit against the Comenouts and other defendants in May 2010 claiming that

---

[1] Robert Comenout has since pled guilty to state criminal charges.

the Indian Country Store was selling untaxed cigarettes and tobacco products.  The Nation's complaint alleged that the Comenouts violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by defrauding the Nation of cigarette taxes and requested $90 million in unpaid tax revenue.  The Nation also pled a $30 million breach of contract claim against Edward Comenout.

In December 2010, after Edward's death, the Estate asserted counterclaims.  The Estate sought a declaratory judgment that Edward had not violated the Cigarette Sales and Tax Code.  It also asked for an order compelling the grant of building and business permits and for mandamus relief, lost profits, and damages due to an alleged antitrust and price-fixing scheme perpetrated by the Nation.

When out-of-court events sufficiently resolved the Nation's impetus for bringing the lawsuit in the first place, the Nation moved to dismiss the Estate's counterclaims and voluntarily dismiss the entire action under Federal Rule of Civil Procedure 41(a).  The Estate opposed dismissal of its counterclaims and moved to amend.  The district court granted the Nation's motions to dismiss, reasoning that the Estate's counterclaims are barred by the Nation's sovereign immunity.  Because the Estate's proposed amendments did not cure the sovereign-immunity problem, the court also denied the motion to amend as futile.

## Discussion

We start with the basics of sovereign immunity.  It is well settled that Indian tribes possess tribal sovereign immunity because they are "domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) (internal quotation marks and citation omitted).  As the name implies, that

immunity is a "common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Tribes are shielded not only from suits for money damages, but from declaratory and injunctive relief as well. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991). Although a suit may be maintained against tribal officers in certain circumstances, the tribes themselves are protected. *See Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012).

Under these simple rules, if the Estate had brought its claims in a separate suit against the Nation, the suit could not proceed. The Estate seeks monetary, declaratory, and injunctive relief from the Nation itself, all of which would be barred by the Nation's sovereign immunity.[2] The operative question in this appeal is whether the Estate's counterclaims are similarly barred. In other words, we must determine whether asserting these claims for relief as counterclaims changes the sovereign-immunity analysis. On the facts of this case, we hold that it does not.

## I.   No Waiver of Tribal Sovereign Immunity

A tribe's sovereign immunity is a powerful protection from suit, but it is not impenetrable and may be surrendered. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Nevertheless, a sovereign-immunity waiver is

---

[2] For this reason, the Estate's counterclaims could not "remain pending for independent adjudication," and the district court could not simply dismiss the action "over the [Estate]'s objection." Fed. R. Civ. P. 41(a)(2). Instead, the district court first dismissed the counterclaims as barred by the Nation's sovereign immunity. At this point, no counterclaims remained, and the action was dismissed under Rule 41(a)(2).

effective only if it is "unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58 (citation omitted).  Here, the Nation filed the underlying suit but took no further action that unequivocally waived its immunity to the Estate's counterclaims.  Nor do the Estate's counterclaims qualify as claims for recoupment.  Accordingly, we reject the Estate's contention that the Nation has waived its sovereign immunity.

### A. Filing Suit Does Not Result in Wholesale Waiver

We start with the unremarkable premise that the bare act of filing suit does not operate as a complete, automatic waiver that subjects a tribe to any counterclaims filed by the defendant. *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989).  The Supreme Court has proclaimed that "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991).  Tribal immunity even extends to compulsory counterclaims in excess of the original claims—despite the fact that compulsory counterclaims by definition arise out of the same transaction or occurrence. *See id.* at 509–10; *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513 (1940).  On this point, "Supreme Court precedent couldn't be clearer . . . : a tribe's decision to go to court doesn't automatically open it up to counterclaims—even compulsory ones." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1011 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1451 (2016).

Thus, the mere fact that the Nation initiated this action is not enough for the Estate to assert its barrage of

counterclaims without offending the Nation's sovereign immunity. Unless the Estate can identify something that the Nation has done to waive its immunity as to one or all of the counterclaims, the Nation's immunity from suit remains intact.

## B. The Nation Has Not Waived Immunity to Individual Counterclaims

In rare instances, a tribe's participation in a lawsuit can "effect a waiver for limited purposes." Cohen's Handbook of Federal Indian Law § 7.05[1][c], at 645 (Nell Jessup Newton ed., 2012). The scope of the waiver depends on the particular circumstances, including the tribe's actions and statements as well as the nature and bounds of the dispute that the tribe put before the court. *See McClendon*, 885 F.2d at 630–31. We demand clarity that the tribe gave up its immunity. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (stating that ambiguity in the waiver of sovereign immunity should be construed in favor of immunity). Proceeding through the Estate's counterclaims, we conclude that the Nation has not expressly waived its immunity to any of them.

The Nation's only relevant conduct is that it brought suit against the Comenouts for RICO violations and breach of contract, alleging that the Comenouts defrauded the Nation of cigarette taxes. The Estate's four counterclaims seek: (1) building and business permits and a declaratory judgment that Edward Comenout did not violate the tax code, (2) lost profits and other damages resulting from the Nation's refusal to grant permits and related to the filing of the suit, (3) mandamus relief in the form of a building permit, and (4) treble damages for loss of income based on an alleged price-fixing scheme between the Nation and the State of Washington.

The Estate requests some affirmative relief distinct from what the Nation seeks. Counterclaims (1) and (3) ask the court to order the Nation to issue building and business permits, and counterclaim (2) seeks lost profits and other damages for the refusal to issue permits and for the filing of the suit. In counterclaim (4), the Estate requests money damages based on facts that are even more far-flung from the Nation's RICO and contract claims, alleging that the Nation conspired with the State of Washington to fix cigarette prices. The entirety of counterclaims (2), (3), and (4) and part of counterclaim (1) go beyond the contours of the Nation's suit, so the Nation cannot be said to have unequivocally consented to their adjudication. *See McClendon*, 885 F.2d at 630.

Sovereign immunity also bars the remainder of counterclaim (1), which seeks a declaration that the Estate obeyed the tax code, though that claim admittedly presents a closer call. In particular, the Nation's "[i]nitiation of [the] lawsuit necessarily establishe[d] consent to the court's adjudication of the merits of that particular controversy," and the declaratory judgment mirrors the merits of the RICO controversy that the Nation asked the court to resolve. *See id.* But while the Nation took the risk that the court would rule for the Estate on the merits and deny the Nation's requested legal relief, the Nation did not waive its immunity because it did not consent to any counterclaims. *See id.* The Estate could assert affirmative defenses against the Nation's claims, but it could not bring counterclaims absent waiver of sovereign immunity.

That conclusion is reinforced by what is required for an unequivocal waiver of tribal sovereign immunity. Our situation involves far less than *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241 (8th Cir. 1995). There, the Eighth Circuit

allowed counterclaims to quiet title and for damages to be asserted against a tribe that filed a quiet-title action. *Id.* at 1244–45. However, the tribe there did more than file a lawsuit: it invoked the district court's equitable power to determine the status of land and explicitly asked that the court order the defendants to "assert any claims in the disputed lands they possessed against the Tribe." *Id.* at 1244. The Nation's actions do not rise to that level of unequivocal consent to the declaratory judgment counterclaim.

A decision from our circuit, *United States v. Oregon*, 657 F.2d 1009 (9th Cir. 1981), requires more discussion, but leaves us in the same place: the tribe there demonstrated its unequivocal consent. The United States initiated an action to apportion a fishery among competing sovereigns, and the Yakima Tribe intervened. *Id.* at 1011. The parties (including the tribe) reached a suitable agreement, which provided for continuing jurisdiction in the district court over future disputes. *Id.* Years later, the State of Washington intervened and argued that the district court needed to enjoin the tribe's fishing so that the fish would not die out. *Id.* The question was whether the district court could enter such an injunction consistent with the tribe's sovereign immunity. *Id.* at 1012.

We said that the injunction was allowed. We analogized the underlying suit to an equitable in rem action whose purpose was to preserve the res—the fishery—by keeping the fish alive. *Id.* at 1015–16. In that respect, the district court could enjoin any interference with the res. *Id.* at 1016. Because the tribe intervened in the equitable action and expressly agreed to submit later-arising issues to federal court, it "assumed the risk that any equitable judgment secured could be modified if warranted by changed

circumstances" and "that [it] would be bound by an order it deemed adverse." *Id.* at 1015. We were cognizant of the risk of "transform[ing] [tribal immunity] into a rule that tribes may never lose a lawsuit." *Id.* at 1014.

*Oregon* "tests the outer limits of [the Supreme Court]'s admonition against implied waivers." *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 420 (9th Cir. 1989); *see also Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1380 (8th Cir. 1985) (disapproving of *Oregon* as "press[ing] the outer boundary" of what constitutes an unequivocal waiver). And there are materially relevant differences between that situation and our situation. Unlike the Nation, the tribe in *Oregon* entered an agreement expressing its unequivocal consent to submit issues to federal court. Further, the suit in *Oregon* was akin to an equitable in rem action, whereas the Nation's suit is legal, not equitable, in nature. That distinction matters because the court in *Oregon* relied on the equitable nature of the action to distinguish the scenario we have here—namely, an action involving a compulsory counterclaim asserted against the tribe. 657 F.2d at 1015. We have previously distinguished *Oregon* on these same grounds. *See Squaxin Island Tribe v. Washington*, 781 F.2d 715, 723 n.11 (9th Cir. 1986); *Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization*, 757 F.2d 1047, 1053 n.7 (9th Cir.), *rev'd on other grounds*, 474 U.S. 9 (1985).

*Oregon*'s broader concern about tribes employing sovereign immunity offensively to prevent a loss in court is not present here because, even without its counterclaim, the Estate could still defend against the Nation's RICO claim. In fact, the Estate's counterclaim is duplicative because the Estate separately pled an affirmative defense that it had not violated RICO. Therefore, the district court properly

dismissed the Estate's counterclaims, and they cannot act as life support for a lawsuit that the Nation is ready to put to rest. The Estate's asserted ability to drag out the proceedings and hold the Nation hostage in its own litigation is a direct affront to the Nation's sovereign immunity when there has been no unequivocal waiver.

### C. The Estate Has Not Asserted a Counterclaim for Recoupment

The Estate offers one other justification for maintaining its counterclaims against the Nation: it contends that the counterclaims count as claims for recoupment. We agree that counterclaims to recoup damages arising from the same transaction or occurrence as a tribe's claims do not violate the tribe's sovereign immunity. Nevertheless, the Estate's argument still falters because its counterclaims do not sound in recoupment.

The legal basis for permitting adjudication of matters in recoupment is straightforward. In the analogous scenario where the United States brings suit, the Supreme Court has held that the United States impliedly waives its immunity to counterclaims for recoupment. *Bull v. United States*, 295 U.S. 247, 260–63 (1935). Those claims do not directly implicate sovereignty interests because they seek merely an offset to the sovereign's requested relief instead of affirmative relief from the sovereign. *See id.* at 262 ("[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded."); *United States v. Agnew*, 423 F.2d 513, 514 (9th Cir. 1970) (stating that claims for recoupment "defeat or diminish the sovereign's recovery" but provide no "affirmative relief"). That rule and rationale holds for tribes. *See Hamilton v. Nakai*, 453 F.2d 152, 158 (9th Cir. 1971) (explaining that a tribe's sovereign immunity is generally

coextensive with that of the United States). Thus, we join the two other circuits that have held that claims arising out of the same transaction or occurrence and sounding in recoupment can be sustained as counterclaims against a tribe. *See Berrey v. Asarco Inc.*, 439 F.3d 636, 644–45 (10th Cir. 2006); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 874 F.2d 550, 552–53 (8th Cir. 1989).

That conclusion does not end our analysis, as we must determine whether the Estate's counterclaims constitute claims for recoupment. A recoupment claim "must (1) arise from the same transaction or occurrence as the plaintiff's suit; (2) seek relief of the same kind or nature as the plaintiff's suit; and (3) seek an amount not in excess of the plaintiff's claim." *United States v. Washington*, 853 F.3d 946, 968 (9th Cir. 2017) (citation omitted). As that definition suggests, recoupment claims must be monetary, not injunctive or declaratory. *Id.* Under these standards, none of the Estate's counterclaims are for recoupment.

As a reminder, the Estate wants (1) a declaration that the tax code was not violated and building and business permits, (2) lost profits and other damages associated with the Nation's refusal to issue permits and filing of the suit, (3) mandamus relief in the form of a building permit, and (4) treble damages for lost income resulting from an alleged price-fixing scheme. Right off the bat, the requests for anything other than monetary relief are excluded. That leaves on the table the lost profits, damages for filing suit, and the lost income for alleged price fixing. Those claims fall outside the definition too. The Estate declares injury based on the Nation's denying permits, filing the lawsuit, and engaging in a price-fixing scheme, none of which logically relates to the occurrence that underlies the Nation's claims—namely, the Estate's alleged enterprise to withhold

taxes due. And the damages claimed by the Estate are not bounded by the amount sought by the Nation because they are tied to the Estate's lost profits and loss of income, the latter multiplied by three. The Estate cannot shoehorn its counterclaims into the definition of recoupment. We conclude that the counterclaims as pled are barred by the Nation's sovereign immunity.

## II.  Denial of Motion for Leave to Amend

The Estate's efforts to overcome the sovereign immunity hurdle through amendment are equally unavailing. We have no difficulty concluding that the district court did not abuse its discretion in denying the Estate leave to amend its answer and counterclaims. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (reviewing for abuse of discretion). The court correctly explained that "the Estate's proposed amendments would be futile in light of the Nation's sovereign immunity." We agree because the proposed amendments failed to include allegations that would cure the defects in the original pleading. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014).

In its motion to amend, the Estate sought to add more specific facts to support its already-pled claims and describe events related to abuse of process and tortious interference. Alleging further facts as to the events that occurred does not take the Estate's claims outside the sovereign-immunity bar. The Nation would also be immune from suit on claims for abuse of process and tortious interference, *see Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 563 n.8 (9th Cir. 2016) ("[T]ribal sovereign immunity bars tort claims against an Indian tribe . . . ."), and there is no stronger basis for waiver on these claims than on the Estate's other counterclaims. Because the Estate's amendments do not get around the Nation's sovereign immunity, the district court

properly rebuffed this final attempt to protract the litigation and dismissed the entire action.

**AFFIRMED.**