**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PAUL GRONDAL, a Washington
resident; MILL BAY MEMBERS
ASSOCIATION, INC., a Washington
non-profit corporation,
            *Plaintiffs-Appellees*,

v.

UNITED STATES OF AMERICA; U.S.
DEPARTMENT OF THE INTERIOR;
BUREAU OF INDIAN AFFAIRS;
CONFEDERATED TRIBES OF THE
COLVILLE RESERVATION,
            *Defendants-Appellees*,

v.

WAPATO HERITAGE LLC,
            *Defendant-Appellant*,

and

GARY REYES; FRANCIS ABRAHAM;
PAUL G. WAPATO, JR.; KATHLEEN
DICK; DEBORAH BACKWELL;
CATHERINE GARRISON; MARY JO
GARRISON; ENID T. WIPPEL;
LEONARD WAPATO; ANNIE WAPATO;
JUDY ZUNIE; JEFFREY M. CONDON;

No. 21-35507

D.C. No.
2:09-cv-00018-
RMP

OPINION

VIVIAN PIERRE; SONIA W.
VANWOERKOM; ARTHUR DICK;
HANNAH RAE DICK; FRANCIS J.
REYES; LYNN K. BENSON; JAMES
ABRAHAM; RANDY MARCELLAY;
PAUL G. WAPATO, JR.; CATHERINE L.
GARRISON; MAUREEN M.
MARCELLAY; LEONARD M. WAPATO;
MIKE MARCELLAY; LINDA SAINT;
STEPHEN WAPATO; MARLENE
MARCELLAY; DWANE DICK; GABE
MARCELLAY; TRAVIS E. DICK;
HANNAH DICK; JACQUELINE L.
WAPATO; DARLENE MARCELLAY-
HYLAND; ENID T. MARCHAND;
LYDIA A. ARNEECHER; GABRIEL
MARCELLAY; MIKE PALMER;
SANDRA COVINGTON,
                                    *Defendants.*

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted May 18, 2022
Seattle, Washington

Filed June 13, 2022

Before:  Kim McLane Wardlaw, Ronald M. Gould, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Tribal Matters

In a series of appeals concerning a business lease which Defendant-Appellant Wapato Heritage, LLC, once held on waterfront land within the Colville Indian Reservation in Washington State, the panel affirmed (1) the district court's dismissal of Wapato Heritage cross-claims against the Confederated Tribes of the Colville Reservation and the Bureau of Indian Affairs; and (2) the district court's denial of Wapato Heritage's motion to intervene in a trespass damages trial between the Bureau of Indian Affairs and other parties.

The parcel of land is known as Moses Allotment 8 (MA-8) on Lake Chelan. Wapato Heritage accused the individual beneficial owners of this land – the Confederated Tribes of the Colville Reservation (the "Tribes") and the Bureau of Indian Affairs ("BIA") – of misconduct relating to the business lease. This court previously concluded that Wapato Heritage's business lease expired in 2009, and the land at issue was still Indian land held in trust by the United States.

The district court dismissed Wapato Heritage's cross claims against the Tribes and the BIA because of tribal sovereign immunity, lack of subject matter-jurisdiction, and failure to state a claim.

The panel first rejected Wapato Heritage's contention that the Tribes waived their tribal sovereign immunity by

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

generally participating in this case.  The instances where tribal participation in litigation will constitute a waiver of tribal sovereign immunity must be viewed as very limited exceptions to the general rule that preserves tribal sovereign immunity absent an unequivocal expression of waiver in clear terms.  Here, the Tribes did not waive their sovereign immunity to Wapato Heritage's cross-claims as to the 2009 and 2014 replacement leases.  The Tribes invoked their immunity from suit in two Fed. R. Civ. P. 12(b)(1) motions to dismiss Wapato Heritage's cross-claims for lack of jurisdiction, which were granted.  The Tribes retained their sovereign immunity to the cross-claims, and the district court did not need to rule on the claims' merits.

Second, Wapato Heritage contended that its cross-claims against the BIA were erroneously dismissed for lack of subject-matter jurisdiction and failure to state a claim.  The panel affirmed the district court's conclusions and held to the extent that Wapato Heritage was seeking to recover money damages from the United States, the district court lacked subject-matter jurisdiction to entertain the relevant cross-claims under the Tucker Act and the Little Tucker Act.  Although the cross-claims could also be construed as requests to compel agency action, Wapato Heritage failed to state a claim for a writ of mandamus.  Dismissal under Fed. R. Civ. P. 12(b)(6) therefore was appropriate and there was no reason to transfer the cross-claims to the Court of Federal Claims.

Third, Wapato Heritage contended that this appeal did not relate to Indian Trust land.  The panel rejected this contention because this court recently concluded that MA-8 was still Indian allotment land held in trust by the BIA.  *See Grondal v. United States*, 21 F. 4th 1140, 1145 (9th Cir. 2021).

Finally, the panel held that the district court properly denied Wapato Heritage's motion to intervene in a trespass damages trial between Paul Grondal, Mill Bay RV Park, and the BIA. The parties agreed that this was a Fed. R. Civ. P. 24(a)(2) motion to intervene as a matter of right. The panel held that the criteria for Rule 24(a)(2) were not met here. As a threshold matter, Wapato Heritage lacked intervenor standing because its argument for intervention was based on Mill Bay's alleged threats to sue Wapato Heritage for indemnification of trespass damages awarded against Mill Bay. There was no evidence in the record, however, that any such lawsuit had been filed by Mill Bay, and conjectural or hypothetical injuries cannot create Article III standing. In addition, Wapato Heritage faced no direct liability in this trespass damages trial and was not bound by the judgment because it was excluded from those proceedings. And Mill Bay adequately represented Wapato Heritage's interests because they had the same goal of minimizing the trespass damages awarded. The panel concluded that Wapato Heritage had not set out any legitimate ground for vacating the verdict entered in the trespass damages bench trial.

## COUNSEL

Nathan Arnold (argued), Bruce Johnston, and Emanuel Jacobowitz, Arnold & Jacobowitz PLLC, Seattle, Washington; Tyler D. Hotchkiss and Dale M. Foreman, Foreman Hotchkiss Bauscher & Zimmerman PLLC, Wenatchee, Washington; for Defendant-Appellant.

John L. Smeltzer (argued), Attorney; Todd Kim, Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Vanesaa R. Waldref, United States Attorney; Joseph

P. Derrig, Assistant United States Attorney; United States Attorney's Office, Spokane, Washington; for Defendants-Appellees United States of America, U.S. Department of the Interior, and Bureau of Indian Affairs.

Anna E. Brady (argued), Brian W. Chestnut, and Brian C. Gruber, Ziontz Chestnut, Seattle, Washington, for Defendants-Appellees Confederated Tribes of the Colville Reservation.

**OPINION**

GOULD, Circuit Judge:

This is the latest in a series of appeals concerning a business lease Defendant-Appellant Wapato Heritage, LLC, once held on waterfront land within the Colville Indian Reservation in Washington State. Wapato Heritage accuses the individual beneficial owners of this land, the Confederated Tribes of the Colville Reservation (the Tribes), and the United States, specifically the Bureau of Indian Affairs (BIA), of misconduct relating to this business lease. We have previously concluded that Wapato Heritage's business lease expired in 2009 and the land at issue is still Indian land held in trust by the United States. This appeal is from the district court's dismissal of Wapato Heritage's cross-claims against the Tribes and the BIA under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Wapato Heritage makes four challenges to these dismissals. First, it argues that the district court misapplied tribal sovereign immunity to cross-claims asserted against the Tribes. Second, it contends that the district court erred in dismissing Wapato Heritage's cross-claims against the United States. Third, it insists that this appeal does not relate

to Indian trust land. Finally, Wapato Heritage maintains that it was wrongly excluded from a damages trial between other parties. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

This case involves a dispute about a parcel of Indian land known as Moses Allotment 8 (MA-8) on Lake Chelan in Washington State. "In the 1900s, the United States originally issued title to this land to American Indian Wapato John, a member of the Moses Band of the Columbia Tribe, as an 'allotment' in trust." *Grondal v. United States*, 21 F.4th 1140, 1145 (9th Cir. 2021). This trust initially vested the legal title to MA-8 "in the United States, which was to hold the land in trust for ten years to Wapato John's sole use and benefit," and vested equitable title in Wapato John. *Id*. But the "trust period for MA-8 has repeatedly been extended . . . such that to this day the United States continues to hold legal title to the land, in trust for Wapato John's heirs." *Id*. at 1145.

Today, certain descendants of Wapato John (the Landowners) and the Tribes own undivided beneficial interests in MA-8, which are held in trust by the United States and managed by the BIA. Wapato Heritage, an investment vehicle for the heirs of William Wapato Evans, Jr., separately holds a partial life estate in MA-8, which will expire when Evans's last grandchild dies. *Id.* at 1145 & n.1. Disputes between the Landowners, the Tribes, Wapato Heritage, the BIA, and various MA-8 sublessors led to several lawsuits in Washington State court and federal court, including the litigation underlying this appeal.

MA-8 was unimproved until 1984. *Id.* That year, Evans acquired a twenty-five-year lease on MA-8 (the Master

Lease) to build a recreational vehicle park (the Mill Bay RV Park) with Landowner and BIA approval. Under the lease terms, Evans had to pay the Landowners the greater of: (1) $12,000 in annual base rent, $1 per member in monthly ground rent, 7.5 percent of cash receipts, and 3.5 percent of retail sales; or (2) an alternative minimum rent. The Master Lease gave Evans the option to extend the term for another twenty-five years, or through 2034, by giving written notice to the Landowners and BIA up to twelve months before the end of the initial lease term. It also allowed Evans to sublease MA-8 with permission from the BIA.

Shortly after signing the Master Lease, Evans subleased most of MA-8 to the corporate predecessors of Wapato Heritage, developed the Mill Bay RV Park, and sold Mill Bay RV Park memberships that ostensibly gave buyers the right to use the property until 2034. Evans and the Tribes later executed the Casino Sublease, which assigned the rest of MA-8 to the Colville Tribal Enterprise Corporation (CTEC) for the operation of a tribal casino. The Casino Sublease was subject to the Master Lease, ran through 2034, and required the Tribes to pay Evans $2,500 in annual base rent plus six percent of retail sales made from the subleased premises during each year of the sublease term.

The Mill Bay RV Park was financially unsuccessful so, in 2001, Evans told members that he would close the park. *Grondal*, 21 F.4th at 1146. Two members, Paul Grondal and the Mill Bay Members' Association, Inc. (Mill Bay), sued Evans in Washington State court to prevent closure of the park. Evans died testate while this case was pending, and his rights under the Master Lease passed to Wapato Heritage. After mediation, the parties settled and signed the 2004 Settlement Agreement, which was subject to the Master Lease and by its terms gave Grondal and Mill Bay the right

to use the Mill Bay RV Park until 2034. The BIA attended the mediation but did not intervene as a party.

One year later, the BIA hired an outside firm called the Sells Group to perform an accounting review as required by the Master Lease and Casino Sublease. The Sells Group set out its findings in a written report. This report indicates that CTEC underpaid Evans by $866,248 between 1994 and 1998 due to bookkeeping errors relating to the Casino Sublease. It also shows that accounting mistakes with regard to the Master Lease caused Evans to overpay the Landowners by $751,285 from 1994 to 2005. Per Wapato Heritage, CTEC and the Landowners owe it $1,617,533.

Shortly thereafter, the Mill Bay RV Park was the subject of a federal lawsuit concerning the Master Lease. In 1985, just one year after Evans signed the Master Lease, he mailed the BIA a letter seeking to exercise his option to extend the Master Lease for twenty-five years through 2034. For the next twenty-two years, the Landowners and the BIA operated under the assumption that this 1985 letter was sufficient to trigger Evans's option to renew the Master Lease. Mill Bay incurred certain financial commitments based on this unspoken understanding. *Grondal*, 21 F.4th at 1147.

The BIA later came to believe that Evans's 1985 letter was insufficient to exercise his option to extend the Master Lease because it was not transmitted to the Landowners as required by the Master Lease. In November 2007, the BIA sent Wapato Heritage a letter stating that Evans's 1985 letter did not renew the Master Lease. Upon receipt of this BIA letter, Wapato Heritage still had two months to validly extend the Master Lease by notifying the Landowners in writing. But Wapato Heritage instead sent a response letter to the BIA disputing its assessment of whether Evans's 1985

letter had triggered his option to renew the Master Lease. The ensuing litigation confirmed the BIA's position that the Master Lease expired in 2009. *See Wapato Heritage, LLC v. United States*, 637 F.3d 1033, 1040 (9th Cir. 2009).

After the Master Lease expired, the Landowners granted the Tribes a short-term Replacement Lease on the MA-8 casino site in 2009. Five years later, the Colville Tribal Federal Corporation (CTFC) obtained from the Landowners a new Replacement Lease that rents all of MA-8, including its gas station and waterfront, to CTFC for twenty-five years in exchange for $100,000 in annual base rent plus 4.5 percent of gross casino gaming revenue. CTFC holds a unilateral option to renew the 2014 Replacement Lease for twenty-five years.

Grondal and Mill Bay contemporaneously responded to our decision that the Master Lease expired in 2009 by bringing a second federal lawsuit seeking a declaratory judgment recognizing their right to use MA-8 through 2034. The defendants included the beneficial owners of MA-8, Wapato Heritage, and the BIA. The BIA filed a counterclaim for ejectment of Grondal and Mill Bay from MA-8 and trespass damages. In January 2010, the district court denied a request by Grondal and Mill Bay for continued access to MA-8 and rejected as potentially premature the BIA's motion for summary judgment on ejectment and trespass damages.

In so doing, the district court found that the BIA lacks contractual authority to bring a trespass counterclaim because it is not a party to the Master Lease but can litigate such a counterclaim under its authority as trustee for MA-8. This alerted Wapato Heritage that the BIA's ability to sue Grondal, Mill Bay and Wapato Heritage for trespass depends on its status as holder of legal title to MA-8. Wapato

Heritage then brought a cross-complaint challenging the BIA's standing on the basis that MA-8 is no longer Indian trust land. This cross-complaint requested a declaration that MA-8 is not held in trust, quiet title of MA-8, and partition of MA-8. Wapato Heritage also asserted cross-claims against the Landowners, the Tribes, and United States vis-à-vis the BIA for: (1) cancelation of the 2009 lease of MA-8; (2) reinstatement of the Master Lease; (3) ejection of the Tribes from MA-8; and (4) an order compelling the BIA to recoup sums owed to Wapato Heritage. Concerning ejection, Wapato Heritage alternatively requested payment of back rent consistent with the Casino Sublease as amended in 1994. The BIA responded by pleading a cross-claim against Wapato Heritage on behalf of the Landowners for rent due on casino revenue for January and February 2009.

The BIA eventually renewed its motion for summary judgment on ejectment of Grondal and Mill Bay and trespass damages, which the district court addressed in a July 2020 order. The district court concluded that the BIA had standing to pursue this action against Grondal and Mill Bay because the United States holds MA-8 in trust. The district court also found that Grondal and Mill Bay were trespassing on MA-8 and ordered ejectment, leaving the issue of damages for trial. This July 2020 order left pending Wapato Heritage's cross-claims but resolved the liability aspect of all claims stated against Grondal and Mill Bay, so the district court entered a Rule 54(b) final judgment to facilitate their immediate appeal. Mill Bay appealed and Wapato Heritage joined this appeal because the trust status of MA-8 is dispositive of some of its cross-claims. We held that MA-8 remains Indian allotment land held in trust by the United States through the BIA. *Grondal*, 21 F.4th at 1145.

While that appeal was pending, the BIA moved to dismiss Wapato Heritage's cross-claims. This motion to dismiss supplemented the motions to dismiss filed by the Tribes in 2011 and 2012. Wapato Heritage moved for partial summary judgment or transfer of its cross-claims to the Court of Federal Claims, and to compel certain discovery. On January 19, 2021, the district court dismissed Wapato Heritage's cross-claims with prejudice. The BIA moved to voluntarily dismiss with prejudice its cross-claim against Wapato Heritage. Anticipating its termination from this case, Wapato Heritage asked the district court for permission to participate in the forthcoming trespass damages trial between Grondal, Mill Bay, and the BIA under the theory that Mill Bay would seek indemnification from Wapato Heritage. On February 2, 2021, the district court granted the BIA's motion to voluntarily dismiss with prejudice its cross-claim against Wapato Heritage. The district court also denied for lack of standing Wapato Heritage's request to participate in the trespass damages trial pitting Grondal and Mill Bay against the BIA and denied as moot Wapato Heritage's motion to compel discovery. This order terminated Wapato Heritage from the proceedings, so it could not participate in the ensuing trespass damages trial.

The district court then held a bench trial concerning whether the BIA could recover trespass damages from Grondal and Mill Bay. After weighing the evidence, the district court awarded the BIA $1,411,702 in trespass damages. But the district court credited Mill Bay's position that pre-judgment interest was improper because delays in the case were not attributable to any party. The district court further found that Mill Bay's trespass was caused by Wapato Heritage's misrepresentations that the Mill Bay RV Park memberships were valid through 2034 and flowed from the failure to renew the Master Lease by Evans and later by

Wapato Heritage.  A final judgment followed and Wapato Heritage timely appealed.

## II.  STANDARDS OF REVIEW

Wapato Heritage's cross-claims against the Tribes and BIA were dismissed because of tribal sovereign immunity, lack of subject-matter jurisdiction, and failure to state a claim.  We review such decisions *de novo*.  *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 991 (9th Cir. 2020) (sovereign immunity); *Muckleshoot Indian Tribe v. Tulalip Tribes*, 944 F.3d 1179, 1183 (9th Cir. 2019) (subject-matter jurisdiction); *Pakootas v. Teck Cominco Metals*, 830 F.3d 975, 980 (9th Cir. 2016) (Rule 12(b)(6)).  We can affirm these rulings on any basis supported by the record. *Thompson v. Paul*, 547 F.3d 1055, 1058–59 (9th Cir. 2008); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Wapato Heritage's request to participate in the trespass damages trial between Grondal, Mill Bay, and the BIA was a motion for intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2).  We review *de novo* district court rulings on such motions.  *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021).

## III.  ANALYSIS

Wapato Heritage sets out three grounds for revival of its cross-claims against the Tribes and the BIA.  First, Wapato Heritage argues that the Tribes waived their sovereign immunity so the district court should have reached the merits of Wapato Heritage's cross-claims against the Tribes. Second, Wapato Heritage contends that its cross-claims against the BIA were erroneously dismissed for lack of subject-matter jurisdiction and failure to state a claim. Third, Wapato Heritage insists that MA-8 is not Indian trust land.  Wapato Heritage finally maintains that it should have

been allowed to participate in the trespass damages trial between Grondal, Mill Bay, and the BIA.  We discuss these four arguments in turn below.

## A.  Tribal Sovereign Immunity

"Indian tribes remain separate sovereigns pre-existing the Constitution, and, absent congressional action, retain their historic sovereign authority" to manage their affairs. *Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 907 (9th Cir. 2021) (cleaned up).  A fundamental "attribute of tribal sovereign immunity is immunity from suit."[1]  *Id.*  Lawsuits "against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."  *Id*.  Critically, this "[t]ribal sovereign immunity extends to both the governmental and commercial activities of a tribe, whether undertaken on or off its reservation," *Simermeyer*, 974 F.3d at 991.  Our circuit precedent has held that, by extension, those "tribal

---

[1] For purposes of this case and the issues it raises, we assume that the Tribes have a fulsome and complete sovereign immunity, as that is how the issues were presented by the Tribes claiming full immunity and Wapato Heritage claiming that sovereign immunity was waived. However, when assessing sovereign immunity in other cases, it should be noted that sovereign immunity may have a limited scope in view of Chief Justice Marshall's characterization of Indian tribes as "domestic dependent nations." *See Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991) (quoting *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 18 (1831)).  That characterization has had echoes over generations in our caselaw. *See, e.g.*, *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014) (noting that "the qualified nature of Indian sovereignty . . . plac[es] a tribe's immunity, like its other governmental powers and attributes, in Congress's hands").  Apart from waiver, none of the exceptions to tribal sovereign immunity have been invoked in this case, and we have no occasion to address them here. *See id*.

corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 856 (9th Cir. 2019). In addition, there "is a strong presumption against waiver of tribal sovereign immunity," and any congressional abrogation of tribal sovereign immunity must be unmistakably clear. *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1159, 1162 (9th Cir. 2021). Although tribal sovereign immunity is a quasi-jurisdictional affirmative defense that is forfeited if not asserted by a tribe, federal courts lack subject-matter jurisdiction "when a defendant to a lawsuit timely and successfully invokes tribal sovereign immunity." *Marston*, 17 F.4th at 908 (collecting cases).

Per Wapato Heritage, the Tribes waived their tribal sovereign immunity by generally participating in this case and the district court should have canceled the Replacement Lease for charging below-market rent on MA-8. *See Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1097–98 (9th Cir. 2017) ("In rare instances, a tribe's participation in a lawsuit can [waive tribal sovereign immunity] for limited purposes. The scope of the waiver depends on the particular circumstances, including the tribe's actions and statements as well as the nature and bounds of the dispute that the tribe put before the court." (cleaned up)). We reject Wapato Heritage's contention.

It is the general rule under our precedents that, "[b]y consenting to the court's jurisdiction to determine its own claims . . . , a tribe does not automatically waive its immunity as to claims that could be asserted against it, even as to related matters arising from the same set of underlying facts." *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1017 (9th Cir. 2016) (cleaned up). Stated

another way, "a tribe's participation in litigation does not constitute consent to counterclaims asserted by defendants in those actions." *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989). This doctrine "extends to compulsory counterclaims" against a tribe. *Quinault Indian Nation*, 868 F.3d at 1097. Nor does a tribe's invocation of tribal sovereign immunity in a motion to dismiss for lack of jurisdiction waive that very defense to the relevant claims. *See Bodi*, 832 F.3d at 1018. This makes sense because "a waiver of tribal sovereign immunity cannot be implied but must be unequivocally expressed . . . in clear" terms. *Id.* at 1016 (cleaned up); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); *Quinault Indian Nation*, 868 F.3d at 1097. The instances where tribal participation in litigation will constitute a waiver of tribal sovereign immunity must be viewed as very limited exceptions to the general rule that preserves tribal sovereign immunity absent an unequivocal expression of waiver in clear terms.

Applying these principles, the Tribes did not waive their sovereign immunity to Wapato Heritage's cross-claims as to the 2009 and 2014 Replacement Leases. Wapato Heritage went on the offensive by asserting these cross-claims against the Tribes in answering the complaint filed by Grondal and Mill Bay. And the Tribes invoked their immunity from suit in two Rule 12(b)(1) motions to dismiss Wapato Heritage's cross-claims for lack of jurisdiction, which were granted. Considering this participation of the Tribes in the case, they retained their sovereign immunity to Wapato Heritage's cross-claims and the district court did not need to rule on the merits of these cross-claims. *See Quinault Indian Nation*, 868 F.3d at 1097–98 (explaining that the scope of a tribal sovereign immunity waiver is restricted by "the nature and bounds of the dispute that the tribe put before the court"); *Bodi*, 832 F.3d at 1016–18 (holding that a tribe did not waive

its tribal sovereign immunity to certain claims by removing a lawsuit to federal court then moving to dismiss those claims for lack of subject-matter jurisdiction).

Wapato Heritage urges a contrary conclusion based on *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1989).  But that case is distinguishable.  There, the Yakima Tribe intervened in a civil "action to apportion a fishery among competing sovereigns," then agreed to a settlement vesting "continuing jurisdiction in the district court over future disputes." *Quinault Indian Nation*, 868 F.3d at 1099.  As a result, the Yakima Tribe, by its own clear and unequivocal statement, consented to the submission of fishery issues to the district court and waived its sovereign immunity to related court orders.  *Id*.  The other case on which Wapato Heritage relies, *United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992), is distinguishable on the same express waiver basis.

In the alternative, Wapato Heritage contends that its challenges to the 2009 and 2014 leases are not moot.  This is irrelevant to whether tribal sovereign immunity barred cross-claims against the Tribes.  *See Bodi*, 832 F.3d at 1018.  We also deny Wapato Heritage's request to cancel these leases by a judgment against the BIA.  Wapato Heritage's request to void the 2009 lease on procedural grounds became moot upon issuance of the 2014 lease, which is not mentioned in the cross-complaint.  *See Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 862 (9th Cir. 2017) (clarifying that issues are rendered moot if intervening events prevent courts from granting relief).  And Wapato Heritage presently disputes these leases on a basis not alleged in the cross-complaint, the charging of below-market rent on MA-8.  This ground for relief is forfeited.  *See Etemadi v. Garland*, 12 F.4th 1013, 1026 (9th Cir. 2021) ("[F]orfeiture is the failure to make a

timely assertion of a right."); *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). Wapato Heritage also did not exhaust its administrative remedies for the 2014 lease because it never filed an agency appeal from the BIA's approval of this lease. *See* 25 C.F.R. §§ 2.4, 162.025; *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) ("It is a well-known axiom of administrative law that if a [party] wishes to preserve an issue for appeal, [it] must first raise it in the proper administrative forum." (cleaned up)).    For these reasons, we reject Wapato Heritage's arguments regarding mootness.

Wapato Heritage tries to sidestep these problems by insisting the district court should have allowed its attack on the 2009 lease to proceed with regard to the 2014 lease. But no error exists here because Wapato Heritage never moved to amend its cross-complaint to dispute issuance of the 2014 lease or its financial terms. *See* Fed. R. Civ. P. 15(a)(2); *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1218 (9th Cir. 2012) ("Plaintiffs cannot prevail on an argument that the district court should have sua sponte granted a motion they never filed."); *Alaska v. United States*, 201 F.3d 1154, 1163 (9th Cir. 2000) ("Where a party never asked for permission, its argument that the district court should have permitted is without force." (quotation marks omitted)).

## B.  Wapato Heritage's Cross-Claims Against the BIA

A two-part analysis informed the district court's ruling on Wapato Heritage's cross-claims against the BIA.  First, to the extent that Wapato Heritage was seeking to recover money damages from the United States, the district court lacked subject-matter jurisdiction to entertain the relevant cross-claims.  Second, Wapato Heritage did not state any colorable cross-claims against the BIA, so dismissal under Rule 12(b)(6) was proper.  There was no reason to transfer

these cross-claims to the Court of Federal Claims.  Upon our review of the applicable law and the record, we affirm these conclusions and reject the contrary arguments made by Wapato Heritage.

### i.

Under the Tucker Act, the Court of Federal Claims has original jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  And the Little Tucker Act gives the district courts concurrent jurisdiction over cases not exceeding $10,000.    28 U.S.C. § 1346(a)(2).    Read in conjunction, these two statutes "provide for jurisdiction solely in the Court of Federal Claims for Tucker Act claims seeking more than $10,000 in damages" against the United States. *McGuire v. United States*, 550 F.3d 903, 910–11 (9th Cir. 2008).

The Tucker Act's counterpart for Native American tribes is the Indian Tucker Act, 28 U.S.C. § 1505.  It extends the original jurisdiction of the Court of Federal Claims to claims of identifiable Native American groups in the United States "whenever such claim is one arising under the Constitution, laws, or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band, or group."  *Id.*; *see Navajo Nation v. U.S. Dep't of the Interior*, 26 F.4th 794, 809 (9th Cir. 2022); *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 511 (9th Cir. 2005) (applying the Indian Tucker Act).

Wapato Heritage's cross-complaint requested entry of a court order requiring the BIA to collect the $866,248 in rent CTEC allegedly owed Wapato Heritage under the Casino Sublease. This cross-complaint also sought a money judgment to recoup $751,285 in overpayments Evans purportedly made to the Landowners under the Master Lease. To the extent these cross-claims requested money damages from the United States, the district court lacked subject-matter jurisdiction under the Tucker Act and Little Tucker Act. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); *McGuire*, 550 F.3d at 910–11.

### ii.

The above cross-claims can also be construed as requests to compel agency action such that the Tucker Act and Little Tucker Act are inapplicable. Wapato Heritage regardless failed to state a claim against the BIA. The district court properly dismissed Wapato Heritage's cross-claims concerning the United States and denied Wapato Heritage's motion to transfer these cross-claims to the Court of Federal Claims.

Congress included in the Administrative Procedure Act (APA) a waiver of the United States' sovereign immunity to suits involving claims "that an agency or an officer or employee thereof acted or failed to act in an official capacity" and "seeking relief other than monetary damages." 5 U.S.C. § 702. It does not matter that Wapato Heritage declined to assert an APA cause of action against the BIA. The sovereign immunity waiver in Section 702 extends beyond causes of action provided by the APA. *See Navajo Nation v. U.S. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017) ("[T]he second sentence of § 702 waives sovereign immunity broadly for all causes of action that meet its terms.").

Apart from the possibility that money damages are at issue, the government designates Wapato Heritage's cross-claims against the BIA as petitions for a writ of mandamus, a point Wapato Heritage does not dispute. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003).

Wapato Heritage argues that its cross-claims against the United States can be treated as a breach of contract action or a lawsuit to remedy the BIA's violation of a trust relationship with Wapato Heritage. In addition, Wapato Heritage advances a series of contentions that the United States has a nondiscretionary duty to enforce the Casino Sublease and Master Lease for Wapato Heritage. But Wapato Heritage's cross-complaint never alleges that no other adequate remedy is available, and that omission precludes issuance of a writ of mandamus against the BIA. Nor do Wapato Heritage's briefs on appeal explain why a writ of mandamus is the only way to redress its injuries. Indeed, the opposite is true. Regarding the Casino Sublease, Wapato Heritage and CTEC agreed that any dispute relating to that contract could be redressed in the Colville Tribal Court, and CTEC waived its tribal sovereign immunity to such litigation. Wapato Heritage can sue CTEC in tribal court for rent due under the Casino Sublease. And Wapato Heritage never explains, in its cross-complaint or otherwise, why it cannot recover Evans's overpayments to the Landowners under the Master Lease by personally suing the Landowners for breach of contract, conversion, unjust enrichment, or other causes of action to recover funds. *See Alhadeff v. Meridian on*

*Bainbridge Island, LLC*, 220 P.3d 1214, 1223 (Wash. 2009) (*en banc*) (defining the tort of conversion in Washington State); *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (*en banc*) (reciting the elements of Washington State unjust enrichment claims).

In this context, Wapato Heritage did not state a claim for a writ of mandamus and dismissal under Rule 12(b)(6) was appropriate. *See In re Mersho*, 6 F.4th 891, 897 (9th Cir. 2021) ("This court has the authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. A writ is an extraordinary remedy and Petitioners bear the burden of showing that their right to it is clear and indisputable." (cleaned up)). And Wapato Heritage never identifies the factual allegations it would add to the complaint to cure its failure to plead that no other remedy is available. This omission of an element necessary for mandamus relief validates the district court's conclusion that leave to amend or transfer of Wapato Heritage's cross-claims against the United States to the Court of Federal Claims would be pointless. *See Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1012 (9th Cir. 2011) ("[Plaintiff] failed to alert the court as to what new facts [it] would have alleged. We fail to see how [Plaintiff] could have amended [its] pleadings to cure their deficiencies . . . . Leave to amend would have therefore been futile."). We affirm disposal of Wapato Heritage's cross-claims against the BIA on these grounds. *See Kildare*, 325 F.3d at 1084.

## C. The Trust Status of MA-8

Wapato Heritage appeals the district court's dismissal of its cross-claim that MA-8 is not held in trust by the United States and its requests for ejectment of the Tribes, quiet title to MA-8, and partition of MA-8. This part of Wapato Heritage's appeal must be rejected because we recently

concluded that MA-8 is still Indian allotment land held in trust by the BIA. *See Grondal*, 21 F.4th at 1145 ("Th[e] trust period for MA-8 has been repeatedly extended over the years . . . such that to this day, the United States continues to hold legal title to the land, in trust for Wapato John's heirs."). We need go no further on this issue.

## D. Wapato Heritage's Rule 24(a)(2) Motion to Intervene

Wapato Heritage maintains that the district court erred in denying its motion to participate in the trespass damages trial pitting Grondal and Mill Bay against the BIA. The parties agree that this request was a Rule 24(a)(2) motion to intervene as a matter of right. Under this rule, intervenors as of right are any party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may, as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). These criteria are not met here.

It is true that Wapato Heritage has an interest in MA-8 via its partial life estate in this Indian allotment land. *See Grondal*, 21 F.4th at 1145 & n.1. But Wapato Heritage did not satisfy the other requirements of Rule 24(a)(2). As a threshold matter, Wapato Heritage lacks intervenor standing because its argument for intervention is based on Mill Bay's alleged threats to sue Wapato Heritage for indemnification of trespass damages awarded against Mill Bay. There is no evidence in the record that any such lawsuit has been filed by Mill Bay, and conjectural or hypothetical injuries cannot create Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a

legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (cleaned up)). In addition, Wapato Heritage faced no direct liability in this trespass damages trial and is not bound by the judgment because it was excluded from those proceedings. And Mill Bay adequately represented Wapato Heritage's interests because they had the same goal of minimizing the trespass damages awarded. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises."). The district court properly denied intervention. *See id.* (affirming denial of intervention as of right because the movant did not overcome the presumption of adequate representation by a party with parallel interests). We reject Wapato Heritage's assertions to the contrary and we will not remand this case for further proceedings on trespass damages.

Wapato Heritage urges the opposite conclusion by suggesting that the district court's denial of its motion to intervene and the related motion to compel discovery deprived Mill Bay of documents and expert testimony relevant to trespass damages. This contention is unavailing. Wapato Heritage was terminated as a party to this case when the district court denied its motion to intervene, rendering its motion to compel discovery moot. *See Public Utils. Comm'n of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1458 (9th Cir. 1996) (clarifying that the question of mootness turns on whether "there is a substantial controversy, between parties having adverse legal interests"). And Wapato Heritage lacks standing to litigate the disadvantages Mill Bay may have incurred because the district court did not compel certain discovery. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasizing that a party "generally must assert his own

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Wapato Heritage has not set out any legitimate ground on which we could vacate the verdict entered in the trespass damages bench trial below.

## IV.  CONCLUSION

For the above reasons, we affirm the dismissal of Wapato Heritage's cross-claims against the Tribes and the United States, and the denial of Wapato Heritage's motion to intervene in the trespass damages trial between Grondal, Mill Bay, and the BIA.

**AFFIRMED.**